Kenneth S. Hixson, Judge, concurring. I concur with the majority that the trial court improperly considered documents not authorized by Rule 56 of the Arkansas Rules of Civil Procedure and that the case must be reversed and remanded; however, I would reverse and remand for additional reasons. In reaching its decision granting appel-lee’s summary judgment and dismissing the appellant’s complaint, the trial court reviewed the 1952 Act of Exchange between the United States and International Paper (IP), which created Lake Erling, and the 2004 Corrected Lake Easement between AGRED[1] and Lake Erling Properties, LLC. The Arkansas Game and Fish Commission Land Use Policy (AGFC policy) was attached to the Corrected Lake Easement as an exhibit. It is from the Act of Exchange, the Corrected Lake Easement, and the AGFC policy that the trial court concluded that the intent of the grantor could be clearly found 17within the four corners of the document itself and that the paragraphs were easily harmonized within the whole of the instrument. I disagree. The trial court granted partial summary judgment to the Burtons and dismissed AGRED’s complaint stating, inter alia, that the Corrected Lake Easement was consistent with the intent expressed in IP’s grant of exchange to place “no restriction on the public’s use of the lake.” However, from a plain reading of the documents, the contents of the Act of Exchange and the Corrected Lake Easement are inconsistent, which creates an ambiguity that cannot be disposed of on summary judgment. After AGRED filed its complaint for trespass against the Burtons, the B.urtons filed a counterclaim for declaratory judgment. Specifically, the Burtons “pray[ed] for a judgment declaring their right to unencumbered access to all the waters of Lake Erling and the land that lies beneath the waters of Lake Erling pursuant to the Corrected Lake Easement attached as Exhibit A to Plaintiffs Complaint.” Additionally, the Burtons “pray[ed] for a declaratory judgment that Counter-Defendant cannot impose any burden on Counterclaimants beyond that expressly stated in the Corrected Lake Easement.” The Burtons subsequently filed a. motion for partial summary judgment. While the sole issue between the parties appears to be whether AGRED could require the Burtons to purchase a dock permit, from a fair reading of the record, the order of the trial court ostensibly abolished, all restrictions and regulations, on Lake Erling. In its order granting partial summary judgment, the trial court incorporated by reference its oral findings. |sTo put the trial court’s order in context, a review of some of the trial court’s pertinent comments and findings reveals the expansive scope of the trial court’s order. After the trial court reviewed the Act of Exchange, it quoted paragraph 5(d), which stated, “It is understood and agreed that International Paper Company shall place no restriction upon the public use of the water area of the industrial water supply reservoir located on its lands, either flood control, recreational, wildlife, or fishing and hunting purposes.” The trial court then expounded on the issue of no restrictions on the lake area: [T]he defendants [Burtons] request the Court to find there to be no genuine issue as to any material fact and that they are entitled to judgment as a matter of law and that the Court enter the declaratory judgment finding Defendants to have a right of access to Lake Erling, including the lake bed and express right to construct a dock and boat house on their adjacent property. [[Image here]] In some respects the parties agree that the rights, obligations, and competing interests of the litigants are controlled by the Act of Exchange and the subsequent Corrected Lake Easement. [[Image here]] AGRED argues this perpetual and non exclusive .[Corrected Lake E]asement is subject to the following language found on page 1056 of the Corrected Lake Easement: Said easement rights shall be exercised in compliance with Subsection (a), the .existing | ¡¡policies on land use around the Arkansas Game and. Pish Commission lakes, as more particularly described in Exhibit 1 attached hereto[.] [[Image here]] The Court then is called upon to interpret the intent of the grantor in the making of the conveyance in the Corrected Lake Easement. ■ After the trial court made these introductory comments, it then added the following: I find the intent of the grantor to be clearly found within the four corners of the document itself and do not consider extrinsic evidence in this interpretation of the instrument.[2] Although the provisions cited by the litigants in support of their position such as perpetual non exclusive easement versus the language regarding it must be exercised in compliance with [what] appears to create an ambiguity by conflicting paragraphs. The paragraphs are easily harmonized within the whole of the instrument. [Pertaining to the AGPC policy, that paragraph reads as follows:] It is specifically understood and agreed that the grantee shall have the full responsibility of obtaining any and all federal, state, or local government permits or licenses for grantee’s construction upon or use of the easement property as contemplated hereby. And grantee shall fully comply with all. of the laws, rules, regulations, and requirements of any federal, state, or local governmental authority, agency, commission, or other regulatory body[.] [[Image here]] It is clear from the language used by the grantor it was IP’s intent to provide a governmental agency or body with regulatory authority to enforce its laws, rules, or regulations on the lake and to make the grantee’s easement subject to and subservient to state, federal, - and local rule making authority. The property being a lake, it would only be logical to cite the Arkansas Game and Fish Commission as an agency with whose rules and regulations one would have to contend. The language places the grantees on notice of such a reality. hnAfter reviewing and quoting from several sections of the restrictions set forth in the AGFC policy, which was attached as exhibit 1 to the Corrected Lake Easement, the trial court concluded, The language of the Corrected . Lake Easement as a whole clearly sets forth the intent of the grantor to allow grantee Lake Erling Properties to have a perpetual easement with the right to enter onto the lands and improve it by way of building docks and other structures and improvements that would encourage people to use the lake for recreational activities and build homes on lakefront properties.... The easement granted Lake Erling Properties is consistent with the intent expressed in the original Aet of Exchange and that is to place no restriction on the public’s use of the lake.... Therefore, this Court finds that there be no remaining issue of genuine material fact and [that] ... Defendants possess a perpetual, non-exclusive easement as described in the Corrected Lake Easement. (Emphasis added.) While the trial court’s order is perhaps ambiguous in its scope, the underlying premise of the order is easily gleaned from the trial court’s own words: “The easement granted Lake Erling Properties is' consistent with the intent expressed in the original Act of Exchange and that is to place no restriction on the public’s use of the .lake.” (Emphasis, added.) Hence, the only reasonable interpretation of the trial court’s order is that there are no restrictions on-the'public’s use of the lake including, in toto, the AGFC land use policy. Therefore, Lake Erling has now been declared by the court regulation and restriction free. That leads to the questions on appeal: whether there are no issues of material fact regarding the grantor’s intent as it relates to restrictions on the lake and whether the grantor’s intent can be determined from the four corners of the document, In my opinion, the answers are no. The trial court cited language from the Act of Exchange, which provided that the use of the lake would be unrestricted. However, the trial court also stated, “It is clear from the | H language used by the grantor it was IP’s intent to provide a governmental agency or body -with regulatory authority to enforce its laws, rules, or regulations on the lake.” Further, the Corrected Lake Easement provides that the grantee shall have the full responsibility of obtaining any and all federal, state, or local government permits or licenses ... [and that the] grantee shall fully comply with all of the laws, rules, regulations, and requirements of any federal, state, or local governmental authority, agency, commission, or other regulatory body ... [as they] may relate to [the] protection of the environment, water, air and soil, both surface and subsurface .. ■. and to make the grantee’s easement subject to and subservient to state, federal, and local rule making authority. Clearly, these commands in the documents are restrictions placed on the public’s use of the lake and its adjacent land. By going no further, the Act of Exchange and the Corrected Lake Easement provide inconsistent positions on whether the lake is subject to restrictions or regulations. This inconsistency causes the disposition of this case to be unsuitable for summary judgment and requires the case be reversed and remanded to the trial court for a trial on the merits to determine the grantor’s intent. Murphy, J., joins. . The easement was actually granted by a predecessor of AGRED. . Whether the trial court improperly reviewed and relied on the extrinsic evidence of the AGFC letter is the subject matter of the majority opinion, which I join.